

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00144-CR

LAMOND MAYRICE LAWRENCE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 7th District Court
Smith County, Texas
Trial Court No. 007-0916-08

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Having been previously sentenced to life imprisonment in Smith County as the result of his conviction of burglary of a habitation with the intention to commit aggravated assault, combined with a finding of the use of a deadly weapon,[1] Lamond Mayrice Lawrence sought to have the trial court order post-conviction deoxyribonucleic acid (DNA) testing pursuant to Article 64.03 of the Texas Code of Criminal Procedure, in an attempt to prove the innocence he alleges.[2] *See* TEX. CODE CRIM. PROC. ANN. art. 64.03 (West Supp. 2013). We affirm the trial court's denial of Lawrence's application.

The victim of the crime for which Lawrence was convicted was Lawrence's former girlfriend. In Lawrence's trial, the girlfriend testified that a masked man wearing gloves entered her townhouse. Telling her that she was "going to learn," the intruder kicked her and beat her, both with his hands and with a bed rail, until she lost consciousness. The victim testified that when she regained consciousness, her assailant was standing over her with the bed rail in his hand. When she called the assailant "Mayrice" (the name she called Lawrence), the assailant sat on the couch and removed the ski mask, allowing the victim to see his face. Afterwards, Lawrence first choked the victim and then drove her to his apartment, where he forced her to

---

[1] *See Lawrence v. State*, No. 01-09-00209-CR, 2010 Tex. App. LEXIS 2589 (Tex. App.—Houston [1st Dist.] Apr. 8, 2010, no pet.) (mem. op., not designated for publication).

[2] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

take a pink pill.  After this episode, the victim spent four days in the hospital with a collapsed lung, broken ribs, and other life-threatening injuries.

Lawrence sought to have DNA testing conducted on the gloves and boots worn by the perpetrator and the bed rail used to beat the victim.  The State responded that although the bed rail was available for testing, neither the gloves nor the boots were available for DNA testing because the gloves had been destroyed[3] and the boots had never been seized.[4]  The trial court denied Lawrence's application for post-conviction DNA testing which had attached affidavits.[5] The trial court's stated rationale for the denial was that the identity of the assailant was not at issue and, additionally, it found that Lawrence failed to prove he would not have been convicted if exculpatory results were obtained through testing.[6]

Our review defers to a trial judge's findings of fact when those findings are supported by the record and when those questions turn on credibility and demeanor.  *Esparza v. State*, 282 S.W.3d 913, 921 (Tex. Crim. App. 2009).  We review legal issues de novo.  *Id*.

---

[3]We note that the Texas Code of Criminal Procedure now requires the State to preserve evidence until the inmate dies, completes his sentence, or is released on parole.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.43(c) (West Supp. 2013).  Chapter 64 of the Texas Code of Criminal Procedure, however, provides no remedy for improper destruction of the evidence.  *Watson v. State*, 96 S.W.3d 497, 500 (Tex. App.—Amarillo 2002, pet. ref'd).

[4]Chapter 64 only applies to evidence "that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense."  TEX. CODE CRIM. PROC. ANN. art. 64.01(b) (West Supp. 2013).  The State cannot be required to collect additional evidence under Chapter 64.

[5]The Texas Court of Criminal Appeals has held that "[n]othing in Article 64.03 requires a hearing of any sort concerning the trial court's determination of whether a defendant is entitled to DNA testing."  *Rivera v. State*, 89 S.W.3d 55, 58–59 (Tex. Crim. App. 2002).  Such a determination may be based solely on affidavits.  *See id.* at 59.

[6]We note that Lawrence claims the trial court applied the wrong standard of proof.  The trial court's order does state, "The Court further finds [pursuant to the reasons set forth in *Prible vs. State*, 245 S.W.3d [466] (Tex. Crim. App. 2008)] Defendant failed to establish that 'he would not have been convicted if exculpatory results had been obtained through DNA testing' as required by statute."  The State argues the trial court merely used inartful language in summarizing the standard.  The record does not establish that the trial court applied an incorrect standard.

3

The State argues that identity of the perpetrator was not at issue because the victim recognized the voice of the masked intruder as belonging to Lawrence, recognized the intruder as Lawrence when the intruder removed his ski mask in her presence, and testified concerning further assaults after Lawrence had removed his mask. The State additionally argues that Lawrence admitted that the bed rail belonged to him.[7] The State argues that because the only contest to the identity of the assailant was Lawrence's own self-serving denial that he had performed these acts,[8] the trial court did not err in finding identity was not at issue.

The Texas Court of Criminal Appeals, however, has explained that identity can be at issue even when identity was established by overwhelming eyewitness and circumstantial evidence. The court has observed that "overwhelming eye-witness identification and strong circumstantial evidence . . . supporting guilt is inconsequential" in determining whether to grant requested DNA testing. *Esparza*, 282 S.W.3d at 922. Eye-witness identification evidence is "irrelevant to whether appellant's motion for DNA testing makes his identity an issue" even in the situation "where the victim knew the person she identified at trial as her attacker" and even when the accused has entered a plea of guilty. *Blacklock v. State*, 235 S.W.3d 231, 233 (Tex. Crim. App. 2007). An applicant for DNA testing "can make identity an issue by showing that

---

[7]The opinion of the First District Court stated the futon bed rail came from the victim's son's bedroom. *See Lawrence*, 2010 Tex. App. LEXIS 2589, *2. Lawrence testified at trial that the futon bed belonged to him at one time but he and the victim had "exchanged" some property while dating and the futon bed was in the victim's possession at the time of the crime.

[8]At trial, Lawrence testified he had received a text from the victim asking him to come over to her apartment. When he arrived, Lawrence claimed to have found the victim unconscious. Lawrence claimed another person was the assailant but admitted he did not call the police or an ambulance for the victim.

4

exculpatory DNA tests would prove his innocence." *Id*. Thus, the victim's testimony and other evidence that Lawrence was the perpetrator does not prevent identity from being at issue.

Although the eyewitness testimony and strong circumstantial evidence that Lawrence was the perpetrator is not relevant to disprove that an issue of identity exists, we agree with the trial court that Lawrence failed to prove by a preponderance of the evidence that he would not have been convicted if the DNA testing were to provide the results he wishes to receive. Lawrence does not seek testing of biological evidence that could only have been left by the assailant. Unlike *Blacklock*, this is not a case where a biological sample has already been identified as belonging to the assailant. *Id.* (ordering DNA testing of sperm, even though victim testified that she knew assailant personally). Lawrence argues either the absence of traces of his DNA on the bed rail or the presence of a third person's DNA on it would serve to establish his innocence.

Even if we were to assume that DNA testing on the bed rail would demonstrate a lack of Lawrence's DNA or the presence of another person's DNA there, neither of these circumstances would be evidence to exonerate Lawrence of the crime. It is uncontested that the assailant wore gloves during the assault and, therefore, the gloves may have prevented any deposit of DNA on the bed rail. Further, DNA may be present on the bed rail from sources other than that of the assailant; the DNA of persons who either used the bed or who delivered or assembled it could conceivably be found on the bed rail. "The presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence." *Bell v. State*,

5

90 S.W.3d 301, 306 (Tex. Crim. App. 2002).[9] The Texas Court of Criminal Appeals has recognized that the presence of a third-party DNA match does not affirmatively cast doubt upon the validity of the inmate's conviction when there are multiple actors or potential sources for the DNA. *See Ex parte Gutierrez*, 337 S.W.3d 883, 902 (Tex. Crim. App. 2011). Similar to the situation in *Guitierrez*, there is no way of knowing (even if DNA is detected on the tested item) whether the assailant was the source of the discovered DNA. *See id*. at 900–01 ("[E]ven if some DNA were found in Mrs. Harrison's fingernail scrapings, there is no way of knowing whether it came from one of her murderers."). DNA evidence that would merely "'muddy the waters'" is not required to be tested by Chapter 64. *Id*. at 901–02.

It would be impossible to determine whether any DNA on the bed rail came from the assailant or from someone who merely had access to the bed rail in some fashion. Taking into account the uncontroverted testimony that the assailant wore gloves, the absence of DNA would also lack probative value. Lawrence had the burden to prove by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. TEX. CODE CRIM. PROC. ANN. art. 64.03(a); *Smith v. State*, 165 S.W.3d 361, 364 (Tex. Crim. App. 2005). Lawrence failed to meet this burden. A trial court is not required to order testing if, regardless of the results, testing would not show by a preponderance of the evidence that appellant would not have been convicted. *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim.

---

[9]Contrarily, since Lawrence admitted that the bed rail belonged to him, if DNA testing revealed that it contained Lawrence's DNA, that DNA may have been deposited there by means unrelated to the assault. Accordingly, the fact that the bed rail tested positive for Lawrence's DNA would not have been affirmative evidence of very much here.

App. 2008).  We agree with the trial court that Lawrence failed to show that it was more likely than not that exculpatory results would have altered the outcome of the trial.

We affirm the trial court's order denying testing.


Bailey C. Moseley
Justice

Date Submitted:     October 30, 2013
Date Decided:       November 5, 2013

Do Not Publish

7